JESSIE D. MCDONALD,                                    CIVIL NO. 08-5069 (JNE/JSM)

     Plaintiff,

v.                                                                    REPORT AND RECOMMENDATION

OVERNITE EXPRESS, ET AL., AND
TRANSPORT LEASING CONTRACT, INC.,

     Defendants.


The above matter came on before the undersigned upon the Motion to Dismiss of Transport Leasing Contract, Inc. [Docket No. 54]. This motion was decided on the papers. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).

## I.    BACKGROUND

The initial Complaint in this matter was filed on September 2, 2008. See Docket No. 1. The Complaint asserted claims against defendants based on 42 U.S.C. §§ 1983, 1985 and 1986, the Age Discrimination in Employment Act of 1967 ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). Both Transport Leasing Contract, Inc. ("TLC") and Overnite Express ("Overnite") brought a motion to dismiss claims asserted under 42 U.S.C. §§ 1983, 1985 and 1986 pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Docket Nos. 11, 15. On June 18, 2009, this Court issued a Report and Recommendation, recommending that McDonald's claims under 42 U.S.C. §§ 1983, 1985 and 1986 against TLC and Overnight be dismissed. See Docket

No. 44. On July 7, 2009, United States District Judge Joan Erickson adopted this Court's Report and Recommendation and dismissed these claims with prejudice. See Docket No. 59.

On June 18, 2009, this Court granted McDonald's motion to amend his Complaint to add a claim against defendants under 42 U.S.C. § 1981. See June 18, 2009 Order [Docket No. 45]. McDonald filed his Amendment to Complaint on June 26, 2009. See Docket No. 47. McDonald alleged the following factual allegations in his amended complaint, which were virtually identical to those in his original Complaint:

On September 4, 2007, defendant Overnite hired McDonald as a road driver. See Amendment to Complaint ("Am. Complaint"), ¶ 2. McDonald underwent orientation by Overnight with three other new drivers who were Caucasian. Id. At the conclusion of the orientation period, McDonald was the only driver that was assigned to a pre-selected truck, No. 1044. Id., ¶ 3.

Drivers working for Overnite are paid on a per mileage basis, which resulted in McDonald being paid $.34 per mile. Id., ¶ 4. As such, McDonald's salary was based on the number of trips he made and the mileage covered on each trip during each pay period. Id., ¶ 5. After a driver completed delivery of a load, he would pick up another load and accumulate more miles, thereby resulting in a larger pay check. Id., ¶ 6.

McDonald claimed that he was subject to discrimination based on his race and age based on several incidents.

- On one occasion, he was dispatched to pick up a load on a Monday and to deliver it to a destination approximately 500 miles away on a Friday, which limited McDonald's pay for the week to $170.00. See Am. Complaint, ¶ 7. After he explained the situation "to the management of the delivery", he was informed that Overnight set the delivery date, and that "management of Overnight Express frowns upon drivers changing delivery dates." Id., ¶¶ 8, 9.

•   During orientation, McDonald and the other drivers were instructed to contact the dispatcher in the areas where a load was being delivered in order to be assigned a new dispatch.  Id., ¶ 10.  Thus, on one occasion, McDonald delivered a load in Illinois, and the Chicago dispatcher gave him a different load to be delivered within a reasonable time.  Id., ¶ 11.  But after this incident, McDonald was instructed to only contact the dispatcher assigned to him in Saint Paul, Minnesota, and the Chicago dispatcher hung up on McDonald after he called her to inform her of his presence in Chicago.  Id., ¶ 12.

•   On another occasion, McDonald was dispatched to drive with an empty load nearly 200 miles to pick up a load and to deliver the load to a location 34 miles from the pick-up at pre-set time that was impossible to make in light of the 200 mile distance.  Id., ¶ 13.  McDonald was then instructed to wait until the next day to make the delivery without any further pay.  Id., ¶ 12.

•   After expressing his concern regarding his lack of compensation, McDonald was instructed to meet with another driver to swap trailers; was subjected to a random drug test that was not ordered for any other driver; was singled out by having his assigned truck checked for speed tampering; and was issued a letter of reprimand by Overnite's Safety Director for log violations that were never discussed at his orientation.  Id., ¶¶ 14-17.

•   The Safety Director "read out incidents" against McDonald from an accident that caused the wreckage of Truck No.  1044, when he had nothing to do with the accident.  Id., ¶ 18.

•   While McDonald had advised Overnite that he had no previous experience driving in snow, he became stuck in the snow with his truck, which necessitated the use of a wrecker at the cost of approximately $500.  Id., ¶¶ 19-20.

•   Several weeks later, McDonald was forced to use the median on an Interstate highway in order to avoid an accident, which necessitated the use of a wrecker at the cost of approximately $500.  Id., ¶ 21.

•   On March 31, 2008, while leaving the parking area at a truck stop to make a delivery, the trailer on McDonald's truck clipped the mirror on another truck, costing approximately $40.00.  Id., ¶ 22.

•   After making that delivery and returning to the terminal on March 31, 2008, Overnite terminated his employment.  Complaint, ¶ 23.  The separation notice stated that the reason for McDonald's termination was the March 31, 2008 incident involving the clipped mirror.  Id., ¶ 24.

- On May 18, 2008, McDonald filed a written Complaint to the Equal Employment Opportunity Commission ("EEOC") based on his allegations that the "Defendant[1] systematically discriminated against members of the Black culture by hiring Blacks to satisfy the E.E.O.C., but terminate the employment after a few months and the seniority longevity is considerable [sic] shorter than that of the Caucasian employees; and Plaintiff believe the actions of the defendants was motivated because of Plaintiff's age of being 65 years old. There are no members of the Black culture in any management position at Overnite Express." Id., ¶ 25.

In the preamble of the Amendment to Complaint, McDonald asserted that Overnite had singled him out for discrimination and harassment based solely on the fact that he is a member of Black culture and sixty-five years old. See Am. Complaint at p. 1. In the "Jurisdiction" portion of the Amendment to Complaint, McDonald alleged that the Court had "jurisdiction under Title VII of the Civil Rights Action of 1964 and 1967; 42 [U.S.C.] §§ 1981, 1983, 1985, 1986 of the United States Codes. . . ." Id. In the "Relief Sought" section of the Amendment to Complaint, McDonald demanded judgment against defendants for conspiring to deprive him of his civil right to be free from harassment, and for racial and age discrimination. Id. at p. 6.

## II. STANDARD OF REVIEW

Earlier this year, the United States Supreme Court reiterated the principles that govern proper pleading under Rule 8(a) of the Federal Rules of Civil Procedure and a motion to dismiss under Rule 12(b)(6). See Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). Rather than summarize these principles, this Court quotes them verbatim.

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atlantic Corp. v.] Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations,"

---

[1] "Defendant" was not defined in this paragraph.

but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555, 127 S.Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557, 127 S.Ct. 1955 (brackets omitted).

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but

it has not "show[n]"-"that the pleader is entitled to relief."
Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-50. Consistent with Iqbal and Twombly, the Eighth Circuit

stated:

> Even before the Supreme Court's recent decision in Bell
> Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955,
> 167 L.Ed.2d 929 (2007), we held that a civil rights complaint
> "must contain facts which state a claim as a matter of law
> and must not be conclusory." Frey v. City of Herculaneum,
> 44 F.3d 667, 671 (8th Cir. 1995); see also Nickens v. White,
> 536 F.2d 802, 803 (8th Cir.1976). Twombly confirmed this
> approach by overruling Conley v. Gibson, 355 U.S. 41, 78
> S.Ct. 99, 2 L.Ed.2d 80 (1957), and establishing a plausibility
> standard for motions to dismiss. 127 S.Ct. at 1966. After
> Twombly, we have said that a plaintiff "must assert facts that
> affirmatively and plausibly suggest that the pleader has the
> right he claims ..., rather than facts that are merely
> consistent with such a right." Stalley v. Catholic Health
> Initiatives, 509 F.3d 517, 521 (8th Cir. 2007); see Wilkerson
> v. New Media Tech. Charter Sch., 522 F.3d 315, 321-22 (3d
> Cir. 2008). While a plaintiff need not set forth "detailed
> factual allegations," Twombly, 127 S.Ct. at 1964, or "specific
> facts" that describe the evidence to be presented, Erickson
> v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d
> 1081 (2007) (per curiam), the complaint must include
> sufficient factual allegations to provide the grounds on which
> the claim rests. Twombly, 127 S.Ct. at 1965 n. 3. A district
> court, therefore, is not required "to divine the litigant's intent
> and create claims that are not clearly raised," Bediako, 354
> F.3d at 840, and it need not "conjure up unpled allegations"
> to save a complaint. Rios v. City of Del Rio, 444 F.3d 417,
> 421 (5th Cir. 2006) (internal quotation omitted).

Gregory v. Dillard's, Inc. 565 F.3d 464, 473 (8th Cir. 2009).

Thus, to state an actionable claim for relief, a complaint must allege a set of

historical facts, which, if proven true, would entitle the plaintiff to some legal redress

against the named defendants under some established legal theory.

> At this stage of the litigation, we accept as true all of the
> factual allegations contained in the complaint, and review the

6

> complaint to determine whether its allegations show that the
> pleader is entitled to relief. <u>Bell Atlantic Corp. v. Twombly,</u> ---
> U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007);
> Fed.R.Civ.P. 8(a)(2). The plaintiffs need not provide specific
> facts in support of their allegations, <u>Erickson v. Pardus,</u> ---
> U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)
> (per curiam), but they must include sufficient factual
> information to provide the "grounds" on which the claim
> rests, and to raise a right to relief above a speculative level.
> <u>Twombly</u>, 127 S.Ct. at 1964-65 & n. 3. <u>Martin v. Aubuchon</u>,
> 623 F.2d 1282, 1286 (8th Cir. 1980) ("the complaint must
> allege facts, which if true, state a claim as a matter of law").

<u>Schaaf v. Residential Funding Corp</u>., 517 F.3d 544, 549 (8th Cir. 2008). <u>Pro se</u>
complaints are held to less stringent standards than formal pleadings drafted by
lawyers. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (per curiam). However,
"[a]lthough it is to be liberally construed, a <u>pro se</u> complaint must contain specific facts
supporting its conclusions." <u>Martin v. Sargent</u>, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III. ANALYSIS

Pursuant to Rule 12(b)(6), TLC seeks dismissal of McDonald's claims under 42
U.S.C. § 1981, the ADEA and Title VII on the basis that the Amendment to Complaint is
devoid of facts from which this Court could reasonably infer discrimination, intentional or
otherwise, by TLC. <u>See</u> Memorandum of Law in Support of Motion to Dismiss ("TLC
Mem.") at pp. 6-9. The main thrust of TLC's argument is that the Amendment to
Complaint lacks any factual allegations that would support a finding that TLC engaged
in discriminatory conduct; in fact, the amended complaint makes no mention of any
conduct by TLC. <u>Id.</u> at pp. 8-9.

In response to the motion to dismiss, McDonald alleged additional facts
regarding TLC's involvement in the discrimination against him. <u>See</u> Response to "TLC"
Motion to Dismiss at pp. 1-3. McDonald claimed that:

- He was hired by TLC as an over-the-road driver with their driver replacement service.  <u>Id.</u>, ¶ 1.

- His employment was joint venture with Overnight and TLC where Overnight calculated his miles and TLC issued his paycheck.  <u>Id.</u>, ¶ 3.

- He was placed with Overnight by TLC.  <u>Id.</u>, ¶ 4.

- Overnight and Quail Trucking are the same, worked with TLC and "the TLC representative had an office within the office of the other defendant."  <u>Id.</u>, ¶ 5.

- When Overnight terminated his employment, TLC refused to place him with another company based on the reasons Overnight used to terminate him.  <u>Id.</u>, ¶ 6.

- Neither TLC nor Overnight informed him of any grievance process or administrative rights or means to resolve any issues.  <u>Id.</u>, ¶¶ 7, 11.

In reply, TLC, argued that the facts alleged in McDonald's response could not save his claims for relief from dismissal, as they were not included in the Amendment to Complaint, and in any event, even if they were alleged in the Amendment to the Complaint, they did not state viable claims against TLC.  <u>See</u> Reply in Support of Defendant's Motion to Dismiss at pp. 3-5.

Section 1981, in part, addresses racial discrimination in contracts. Specifically, it provides for equal rights under the law and states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."  42 U.S.C. § 1981(a). "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights," which was the

result of racial discrimination. See Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006); see also Patterson v. McLean Credit Union, 491 U.S. 164, 176 (1989) (finding that Section 1981 does not extend to all discriminatory actions, but rather, "prohibits discrimination only in the making and enforcement of contracts."); Smith v. DataCard Corp., 9 F. Supp.2d 1067, 1078 (D. Minn. 1998) ("To recover damages under section 1981, a plaintiff must establish that: (1) the plaintiff is a member of a racial minority; (2) defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute, e.g., to make and enforce contracts.").

The elements for a discrimination claim under Title VII include that: (1) the plaintiff belongs to a protected class; (2) he was qualified to perform his job; (3) he suffered an adverse employment action; and (4) non-members of his class were treated differently. See Whitley v. Peer Review Systems, Inc., 221 F.3d 1053, 1055 (8th Cir. 2000) (citation omitted); Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624 (8th Cir. 1995). Similarly, the elements of an ADEA claim are: "(1) the plaintiff is within the protected age group; (2) the plaintiff met the applicable job qualifications; and (3) the plaintiff was replaced by a younger person." Vaughn v. Roadway Express, Inc., 164 F.3d 1087, 1090 (8th Cir. 1998) (citing Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 776 (8th Cir. 1995)); see also Chambers v. Metropolitan Property and Cas. Ins. Co., 351 F.3d 848, 855 (8th Cir. 2003) (finding that an ADEA claimant must show that "(1) he is 40 years old or older, (2) he was qualified for the job, (3) he was discharged, and (4) age was a factor in the employer's decision to terminate him."). All of these claims require a discriminatory act on the basis of either race or age.

TLC's motion to dismiss must be granted, as McDonald has alleged no conduct by TLC to support claims of discrimination or violations of § 1981, the ADEA or Title VII. In the preamble of his Amendment to Complaint, McDonald only asserted that Overnite had singled him out for discrimination and harassment based solely on the fact that he is a member of Black culture and sixty-five years old. <u>See</u> Am. Complaint at p. 1. In the body of the Amendment to Complaint, McDonald alleged that Overnite hired him. There is no mention how TLC was involved in McDonald's employment or how it interfered with any contractual relationship (potential or existing). Further, McDonald's Amendment to Complaint lacks any factual allegations of discriminatory conduct by TLC against him based on age or race. The only mention of discriminatory conduct are that the unspecified "actions of defendants was motivated because of Plaintiff's age being 65 years old," (Am. Complaint, ¶ 25), and where McDonald sought judgment in the relief section against defendants for conspiring to deprive him of his civil right to be free from harassment and for racial and age discrimination.[2] These statements fail to support any cause of action on the basis of race or age against TLC. <u>See</u> <u>Iqbal</u>, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); <u>Twombly</u>, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

---

[2]  This Court notes that McDonald's claims under 42 U.S.C. §§ 1983, 1985 and 1986, which included his allegation that defendants conspired to deprive him of his civil right to be free from harassment, were previously dismissed as part of TLC's first motion to dismiss. <u>See</u> Docket Nos. 44, 59.

(internal citations omitted). Therefore, TLC's motion to dismiss for failure to state a claim for relief should be granted and the claims under § 1981, the ADEA, and Title VII should be dismissed without prejudice.[3]

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1.      Motion to Dismiss of Transport Leasing Contract, Inc. [Docket No. 54] be **GRANTED**;

2.      Plaintiff's Amended Complaint against Transport Leasing Contract, Inc. be dismissed **WITHOUT PREJUDICE**.

Dated:        September 24, 2009

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

---

[3]      McDonald set out additional facts against TLC in his responsive memorandum regarding TLC's alleged discrimination against him. This Court cannot address the merits of these facts or TLC's argument that they still fail to state claims against it. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief." Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) (citations omitted); see also Tuttle v. Lorillard Tobacco Co., 118 F. Supp.2d 954, 959 (D. Minn. 2000) ("When considering a motion to dismiss, the Court looks only to the factual allegations in the complaint. Any allegations made in subsequent legal memoranda cannot correct inadequacies within a complaint.") (citation omitted).

## **NOTICE**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **October 8, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.